And we'll move to our second case this morning, which is Gilfillan v. Bradley University All right, I see both counsel. Mr. Bach, you may proceed Thank you, Your Honor May it please the court. My name is Jason Bach. I'm the attorney for the appellant in this case, Grace Gilfillan It is our contention here today that had Bradley University provided the accommodations that their own Disability Office approved, Ms. Gilfillan would have been a graduate of Bradley University and not here as a litigant here today A district court erred in determining that Ms. Gilfillan was not qualified or otherwise qualified to be a student at Bradley University in a physical therapy program The district court was required to determine whether or not the plaintiff was qualified at the time of the discrimination and not at the time of her dismissal In our opening brief and in our reply brief, we cite the Conn v. Midwestern University out of this circuit that held that a university needs to look at whether or not a student was qualified when they asked for that accommodation the first time, not when they make a determination to dismiss that student after asking for accommodation Ms. Gilfillan was denied accommodations for a number of months or in this case a year and a half Bradley has not alleged that any of the accommodations that Ms. Gilfillan requested were unreasonable Ms. Gilfillan asserts that she was denied accommodations that were required to give her meaningful access and had she been granted those accommodations, she would not have struggled academically like she did The district court points to timeliness and professionalism issues as an example of Ms. Gilfillan not being otherwise qualified What the court failed to consider were that these issues involving timeliness or what the university called unprofessionalism were actually manifestations of her disability which is the reason why she was asking for additional time as one of the reasonable accommodations that she was requesting and that the university had ultimately granted her but failed to implement and actually provide her those accommodations Under the Kahn analysis, the district court's analysis was improper in even considering these issues of unprofessionalism or timeliness because again, we're talking about issues that developed after she requested accommodations and were the basis of what the university used as her dismissal from the university Mr. Bach, I've got a question about how in your view we should measure the failure to accommodate claim here Let me give you a specific example from the record of what I mean If we look at the fall of 2016, that fall semester, your client asked for three forms of assistance, note taking, extra time for tests, and extra time to turn in assignments Two of the three requests were accommodated. She was given note taking assistance and more time for tests, but she was not given extra time to submit assignments Is that one failure enough to create a jury issue in your view? And if so, why? I believe that it's enough to create a jury issue on that particular course. However, when we're talking about her time in the entire program, I think we have to look at the totality of the accommodation requests and the totality of the refusal to implement the accommodations that were approved What do you mean by totality? Your client attended the university, attended classes, classes occurred by semester, so you're suggesting don't measure whether there was a failure to accommodate each semester, measure it across all of her time within the program? No, Your Honor. What I'm saying is that that is an example of a genuine issue of a material fact that we believe needs to still be resolved by the district court, but we believe that that's just one of many examples that are left unresolved and should be decided at the time of trial So I'm not saying that that's not enough. I believe that it is, but I think that it is just one of many examples that a jury should have been allowed to consider Your Honor, Bradley University accepted Ms. Guilfoyle into their program as a qualified student. They determined before they accepted her that she was qualified, and they testified to that at the time of deposition Ms. Guilfoyle appropriately requested accommodations in her second semester in the program. Accommodations were approved by Bradley University's disability office. The professors and the department that she was in decided to treat those approved accommodations as requests Over time, the department refused to provide these accommodations as they deemed them to be only requests. By the spring of 2017, these requests for accommodations by Ms. Guilfoyle formed a significant basis for the department to put Ms. Guilfoyle on probation, which ultimately set up the issue that took place in the fall of 2017 When she was not permitted to have any additional time, an assignment was late, and she ultimately received a D in that course, which led to her dismissal It is our contention that had Ms. Guilfoyle been provided the accommodations that Bradley approved, if she would have been provided the accommodations that they actually approved, she would not have been in the situation that she found herself in in 2017, and she would have completed and graduated from the program At this point, I would like to reserve the remaining time that I have That's fine Mr. Colhase Good morning. Bill Colhase for Bradley The plaintiff requested accommodations for what she called academic coaching and extended deadlines, academic coaching, simply not an accommodation, and there doesn't seem to be much discussion of that this morning But with respect to extended deadlines, the plaintiff's interpretation of extended deadlines is as long as she could ask prior to a due date, then she was automatically entitled to extensions Her takeoff point for her argument on this relates primarily to the course called PTA 20, in which, by the way, she received an A But at the beginning of that class, and this is docket 21-1 at page 95, 96, and 97, there was an email sent to various professors And the classroom access on page 95 notation says, I may request additional time for assignments These requests may be approved or denied by the professor In this case, we're talking about Dr. Tibbett, the department chair, and his response Thank you, Grace And this is at page 97 at 21-1 I believe that our assignments in PTA 20 are well laid out with realistic timeframes I look for you to complete all your assignments for the class on the date they are due The very syllabus for that course indicates that extensions can be granted There were extensions granted, including to the plaintiff But the concept that she had was, well, whenever I want something, I'll request it Now, she contends that because of what Dr. Tibbett said here, well, she just knew that she would never get any kind of an extension But an important circumstance is the situation involving PTH 16, where she received the D And when you look at the record there, you see that what happened was she was late multiple times, but never, ever once requested an extension The district court correctly noted in its memorandum opinion that there were a number of occasions on which extensions were granted to the plaintiff But you cannot have in this type of a program a situation where a student can say, well, I want to finish this after the semester or whenever I get around to it There's no debate that this program at Bradley is a rigorous three-year lockstep program that is designed to produce qualified, autonomous practitioners of physical therapy The way the district court measured the provision of the accommodation, as you just articulated, looking at the record and saying, well, there were a lot of times, a lot of different semesters where Bradley did offer various accommodations Is that legally correct? And let me give you a hypothetical Suppose, for example, there was a student that was blind that needed a laptop computer in class The university appropriately agreed, of course, we'll give you a laptop And the student said, it also helps for me to sit in the front of the room, front of the lecture hall or front of the classroom And the university said, of course, we'll accommodate that, too And in two of eight semesters, the university didn't do so Didn't provide the laptop, didn't provide the seating Would your position there be, well, you know, they did it six out of eight times, six out of eight semesters, that's good enough It would be good enough if the student without accommodation passed those classes and the student's academic standing was not diminished That would be the case here If a failure to accommodate resulted in a negative impact on the student's academic performance I would agree as your honor is implying that that may not be adequate That surprises me. Would you take that position if a student needed a wheelchair ramp to get in an academic building? Would you say, well, you know, they passed the semester, so the absence of a ramp wasn't a big problem I think that the case law does include, your honor, a causation element that has to be met There are two different things going on here, however The failure to accommodate and the intentional discrimination, both of them are combined in the count one that we're dealing with here I think that the failure to accommodate, perhaps in a physical disability situation, as you're describing Where the student couldn't have the benefit of being in the classroom could have an impact and could cross the line to a violation But here, what we're talking about is extending deadlines that would really change the measurement of performance And, you know, the McGregor versus LSU case where they dealt with the issue of under 504, could a student say, I need part-time attendance in order to accommodate my issues That's effectively what the plaintiff here was trying to do I thought your client agreed to these forms of accommodation Are you saying, no, we didn't agree to any of them, at all, ever Not at all, all accommodations that were granted were provided If I said that we weren't obligated to provide any accommodations, I apologize, I certainly didn't mean to say that Well, no, you didn't say it that declaratively, but when you were talking about, you know, the teacher and that PT 20 or whatever the first class was you mentioned You know, it was up to her or his discretion Right, and she never, in that class, your honor, she never specifically asked for any extension, period And it was never denied. In fact, in this record, you cannot point to any circumstance where there was a class with an assignment where the plaintiff said, I need an extension for that assignment And the professor at a time when this accommodation was in effect said, no, that's denied So is the proper way to measure this, then, semester by semester or accommodation by accommodation? Yes Did the district court do that? On the bottom line, result of being not qualified, no But the overall result was well within what was dictated by the university's handbook for this class And while it wasn't specifically relied on as the reason that the plaintiff was dismissed, she did get a D in a class where she never requested any extensions that by itself was sufficient to support the dismissal So with my time just about expired, if there are any questions, I'd like to address them. Otherwise, thank you Thank you very much. Mr. Bach Thank you. I want to address what Bradley's assertion that Ms. Guilfoyle never requested additional time in the course that she ultimately received the D in and which led to her dismissal was with the PT 816 And the record reflects that Ms. Guilfoyle was informed before that semester even began that she would not be provided any additional time on her assignments So at that point, requesting additional time from her professor would have been futile And it was she'd already had several meetings with these instructors before that semester began And it was made very clear to her that any requests in that course or her other course for additional time would not be granted But Mr. Bach, wasn't the extended deadline accommodation a qualified one that it required professor approval and was course specific? So that any of the professors could withhold extended deadlines if that was inconsistent, if extended deadlines was inconsistent with the teaching objectives That is what the accommodation approval form stated. However, we believe that that was erroneous as well We do not believe that the law allows for an accommodation that has been, once a disability has been established and a need for a certain accommodation has been established based on that disability We do not believe that the university either at the disability resource office or an instructor has the discretion to decide whether or not they want to grant a request to approve an accommodation or not So yes, the document did say that the instructors had that ability, but we believe that that also was a violation of section 504 and ADA as well Do you have some authority to back that up? I don't have any authority that I can present here to you right now that says that However, just in reading various case law, I've never come across a case where a instructor is given any type of discretion to determine whether or not an accommodation should be approved or not approved Most instructors have no qualifications to make that determination I see that my time has expired. If there are no further questions, I will submit this matter on the briefs Thank you. Our thanks to both counsel. The case is taken under advisement